UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARIA PEREZ-WEBBER and JOSSIE REYNOSO, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:16-cv-00196-JAW |
| | ) | |
| INTERCOAST CAREER INSTITUTE, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION FOR SUMMARY JUDMENT

The Court denies an educational institute's motion for summary judgment against the claims of two of its graduates, who allege that the institute failed to provide them with an adequate education, changed the school calendar and the school location, causing them to incur unanticipated expenses and lost income, and refused to provide their school transcripts to others, causing them to lose educational and employment opportunities. The Court concludes that there are genuine issues of material fact that preclude summary judgment. The Court also rejects the educational institute's position that the Plaintiffs' claims do not meet the $75,000 jurisdictional requirement for diversity jurisdiction.

## I.     BACKGROUND

On April 6, 2016, Maria Perez-Webber and Jossie Reynoso, former students at the Nursing Program at InterCoast Career Institute (InterCoast), filed this civil action claiming that InterCoast failed to provide them the quality of nursing

education it advertised. *Compl.* (ECF No. 1). The Plaintiffs alleged breach of contract, negligent misrepresentation, and fraud. *Id.* On May 4, 2016, InterCoast moved to dismiss the complaint and for a more definite statement. *Def.'s Mot. to Dismiss Compl. and/or Mot. for a Mo[re] Definite Statement* (ECF No. 7). On October 31, 2016, the Court denied the motion to dismiss. *Order on Mots. to Dismiss and for More Definite Statement* (ECF No. 10).

Following completion of discovery, InterCoast filed a motion for summary judgment on January 22, 2018 together with a statement of undisputed material facts. *Def. InterCoast Career Institute's Mot. for Summ. J.* (ECF No. 60) (*Def.'s Mot.*); *Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J.* (ECF No. 61) (DSMF). The Plaintiffs filed their opposition on February 22, 2018 with a response to InterCoast's statement of material facts and their own statement of facts. *Pls.' Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 63) (*Pls.' Opp'n*); *Pls.' Resp. to Def.'s Statement of Material Fact* (ECF No. 64) (PRDSMF); *Pls.' Statement of Material Facts* (ECF No. 65) (PSAMF). On March 8, 2018, InterCoast replied to the Plaintiffs' opposition and to their statement of material facts. *Def. InterCoast Career Institute's Mem. in Supp. of Mot. for Summ. J.* (ECF No. 66); *Def.'s Resp. to Pl.'s Statement of Material Facts* (ECF No. 67) (DRPSAMF).

## II.   LEGAL STANDARD

A court may grant summary judgment under Federal Rule of Civil Procedure 56 if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A 'material' fact is a 'contested fact [that] has the potential to change the outcome of the

suit under the governing law if the dispute over it is resolved favorably to the nonmovant,' and a 'genuine issue' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (quoting *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001)) (internal quotation marks and citation omitted).

The Court must examine the record evidence "in the light most favorable to [the nonmovant], and [must draw] all reasonable inferences in . . . favor [of the nonmoving party]." *Foley v. Town of Randolf*, 598 F.3d 1, 5 (1st Cir. 2010). At the same time, courts ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Cortés-Rivera v. Dep't of Corr. & Rehab. of Commonwealth of P.R.*, 626 F.3d 21, 26 (1st Cir. 2010) (quoting *Sullivan v. City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009)).

## III.    STATEMENT OF FACTS[1]

InterCoast is a private, for-profit California corporation which previously operated a private, for-profit Vocational Nursing Program in Kittery, Maine, with the first class starting in about May 2011 until May 2015. DSMF ¶ 1; PRDSMF ¶ 1. InterCoast also operated a private, for-profit Vocational Nursing Program in South Portland, Maine from approximately October 2007 to March 2016. *Id.* Maria Perez-Webber and Jossie Reynoso both attended the Practical Nursing Program

---

[1]     In accordance with "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to the Plaintiffs' theory of the case consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002). In compliance with this obligation, the Court recites certain events as facts even though InterCoast disputes them.

commencing on or about May 27, 2014 until they both graduated on or about September 4, 2015. DSMF ¶ 2; PRDSMF ¶ 2. Ms. Perez-Webber and Ms. Reynoso applied to and enrolled at InterCoast based on its representations that its nursing program was an accredited professional work-like atmosphere with mature competent professionals to teach students the skills needed to become nurses. PSAMF ¶ 2; DRPSAMF ¶ 2. In exchange for InterCoast's representations, Mses. Perez-Webber and Reynoso each paid InterCoast $37,000 in tuition.[2] PSAMF ¶ 3; DRPSAMF ¶ 3.

Ms. Perez-Webber and Ms. Reynoso began taking classes in 2014 at InterCoast's Kittery location. PSAMF ¶ 1; DRPSMAF ¶ 1. The program consisted of four terms.[3] DSMF ¶ 3; PRDSMF ¶ 3. After the Kittery campus shut down, the Plaintiffs were forced to complete their coursework from the South Portland campus, which was an additional burden to them.[4] DSMF ¶ 4; PRDSMF ¶ 4. InterCoast utterly failed to provide Plaintiffs with the education, training, and facilities that it had advertised and that were required by the State Board of Nursing.[5] PSAMF ¶ 4;

---

[2]    InterCoast denied Plaintiffs' paragraph three, affirmatively stating that the Plaintiffs' total tuition was $36,339.46 each. DRPSAMF ¶ 3. In accordance with its obligation to view contested facts in the light most favorable to the non-movant, the Court inserted the Plaintiffs' tuition figure. Even if InterCoast's figures are more accurate (something the Court may not assume at this stage), the difference between the parties is immaterial to the summary judgment issues.

[3]    Although the Plaintiffs denied InterCoast's paragraph three, their denial does not address InterCoast's contention that the program consisted of four terms, and therefore the Court accepts this part of paragraph three, despite the Plaintiffs' general denial. *See* PRDSMF ¶ 3.

[4]    InterCoast's paragraph three states: "Both Plaintiffs finished their final term at the South Portland campus after transferring from the Kittery location." DSMF ¶ 3. The Plaintiffs denied this paragraph, contending that they did not transfer from Kittery to South Portland, rather they were forced to complete their coursework in South Portland because InterCoast closed the Kittery campus. PRDSMF ¶ 3. As the Court is required to view contested facts in the light most favorable to the Plaintiffs, the Court inserts the Plaintiffs' version.

[5]    InterCoast denies this statement and asks that it be stricken. DRPSAMF ¶ 4. Although the statement might be seen as argumentative, it is corroborated by the affidavits of both Ms. Perez-

4

DRPSAMF ¶ 4. In fact, the state of Maine Board of Nursing placed InterCoast on probation and eventually revoked its license because the Practical Nursing Program did not meet minimal requirements, a decision that caused InterCoast to close its nursing program in 2016.[6] PSAMF ¶ 5; DRPSAMF ¶ 5.

Maria Perez-Webber and Jossie Reynoso both signed the same enrollment forms with InterCoast.[7] DSMF ¶ 4; PRDSMF ¶ 4. True and correct copies of the InterCoast enrollment forms signed by both Plaintiffs are attached to the declaration of Geeta Brown, corporate president of InterCoast. DSMF ¶¶ 5-6 (citing *Aff. of Geeta A. Brown in Supp. of Def.'s Mot. for Summ. J.* Attachs. 1-2 *InterCoast Career Institute Enrollment Agreements*); PRDSMF ¶¶ 5-6. Both enrollment forms have an estimated completion date of August 14, 2015 for Ms. Perez-Webber and Ms. Reynoso. DSMF ¶ 7; PRDSMF ¶ 7. Each enrollment form contained the following provision:

> The School has the right, at its discretion, to make reasonable changes in program content, materials, schedules, sequences of courses in programs, or locations in the interest of improving the student's education, or where deemed necessary due to industry changes, academic scheduling, or professional requirements.

---

Webber and Ms. Reynoso, who were students at InterCoast's Practical Nursing Program. They have personal knowledge of the basis for the statement and the Court accepts it because it is required to view contested matters in the light most favorable to the non-movants.

[6] InterCoast denies this statement, insisting that its nursing program was never placed on probation by the Maine Board of Nursing and that its authority to operate its nursing program was never revoked. DRPSAMF ¶ 5. The Court accepts the Plaintiffs' statement because they were students in the program and because it is required to view contested matters in the light most favorable to the non-movants.

[7] InterCoast's paragraph four reads: "Maria Perez-Webber and Jossie Reynoso both signed the same set of Enrollment Forms which comprised a binding contract between each of the Plaintiffs and InterCoast." DSMF ¶ 4. The Plaintiffs deny the portion of the statement that contends the enrollment forms constitute a binding contract. PRDSMF ¶ 4. In light of Plaintiffs' denial, the Court has not included the portion of InterCoast's paragraph four that contends that the enrollment forms constitute a contract because it is a contention of law, not fact.

*Id.*[8]  Both Plaintiffs inserted their initials at the bottom of page four of the enrollment

forms, a few inches from the paragraph quoted above, and both Plaintiffs signed the

enrollment forms on page six.[9]  DSMF ¶ 8; PRDSMF ¶ 8.

During the time the Plaintiffs were attending the Practical Nursing Program,

InterCoast decided to give all students a one-week break between terms.[10]  DSMF ¶

9; PRDSMF ¶ 9.  In part as a result of the one-week break change, the graduation

date for the Plaintiffs was delayed by three weeks.[11]  DSMF ¶ 10; PRDSMF ¶ 10.[12]

---

[8]      The Plaintiffs deny InterCoast's paragraph seven, stating that the changes were not
reasonable and that changing the completion date and transferring the location cause them an
additional financial burden.  PRDSMF ¶ 7.  The Court declines to accept the Plaintiffs' denial.
InterCoast's paragraph seven does not contend that the changes were reasonable.  It only cites and
quotes the enrollment forms, which the Plaintiffs admitted in paragraphs five and six to be accurate
copies of the enrollment forms they signed.  A comparison between InterCoast's paragraph seven and
the content of the admitted enrollment forms confirms that the citations and quotations are accurate.

[9]      Again, the Plaintiffs deny InterCoast's paragraph eight, stating that InterCoast's
representatives and agents failed to explain the terms of the enrollment forms and failed to provide
them with the time to read and understand the documents.  PRDSMF ¶ 8.  The Court declines to
accept the Plaintiffs' denials.  InterCoast's paragraph eight does not contend that its representatives
or agents explained the forms to the Plaintiffs or that they gave the Plaintiffs enough time to read and
understand the documents.  InterCoast's paragraph eight only asserts that the Plaintiffs signed and
initialed the forms.  A comparison between InterCoast's paragraph eight and the content of the
admitted enrollment forms confirms that signatures and initials appear to be those of the Plaintiffs,
assertions the Plaintiffs have not denied.

[10]     In paragraph nine, InterCoast asserts that it imposed the one-week break between terms to
allow the students to become mentally and physically refreshed, to provide the faculty with time to
enhance the program and prepare for the next term, and to help students avoid burn-out.  DSMF ¶ 9.
The Plaintiffs deny InterCoast's statements about the motivations behind the one-week break.
PRDSMF ¶ 9.  As the Court is required to view contested factual matters in the light most favorable
to the Plaintiffs, the Court has not included in the statement of facts InterCoast's contentions about
its reasons for instituting the one-week break.

[11]     In paragraph ten, InterCoast reiterates its beneficent reasons for adding the one-week break.
DSMF ¶ 10.  The Plaintiffs denied the altruistic motivations.  PRDSMF ¶ 10.  It is not clear whether
the Plaintiffs admitted that their projected graduation date was delayed by three weeks because of the
one-week break change.  The Court includes the three-week delay in its statement of facts as the
Plaintiffs do not appear to contest that part of paragraph ten.

[12]     In paragraph eleven, InterCoast states: "As stated in the Enrollment Agreement, InterCoast
had the full discretion to make scheduling adjustments for the purposes stated and scheduling
adjustments were the only reasons for the three week delay in Plaintiffs' graduation."  DSMF ¶ 11.
The Plaintiffs denied this paragraph, contending that under the enrollment agreement, InterCoast's
changes must be reasonable and that transferring the location of the nursing school from Kittery to
South Portland caused them hardship.  PRDSMF ¶ 11.  As the parties do not agree on this contested

Both Plaintiffs initialed an "Enrollment Certification Form."[13] DSMF ¶ 12; PRDSMF ¶ 12. True and correct copies of the signed and initialed enrollment certification forms for the Plaintiffs are attached to Ms. Brown's declaration.[14] DSMF ¶ 13 (citing *Aff. of Geeta A. Brown in Supp. of Def.'s Mot. for Summ. J.* Attachs. 3-4 *InterCoast Colleges/InterCoast Career Institute Practical Nursing Program Enrollment Certification Forms*); PRDSMF ¶ 13. Page two of the enrollment certification form states in part:

> I understand that I must satisfactorily complete my course of study, return all library and/or loan textbooks, complete an exit interview, and pay all tuition charges in full to the institution prior to receiving my diploma, certificate, or final transcript.

DSMF ¶ 14; PRDSMF ¶ 14.[15] The Plaintiffs initialed the paragraph of the enrollment certification form containing this statement. The enrollment agreements also state:

issue, the Court omits InterCoast's paragraph eleven because the Court is required to view contested facts in the light most favorable to the Plaintiffs.

[13] In paragraph twelve, InterCoast states: "Both Plaintiff[]s initialed an 'Enrollment Certification Form,' which required that each Plaintiff sign at the end and initial each paragraph separately." DSMF ¶ 12. The Plaintiffs deny this paragraph. PRDSMF ¶ 12. However, the basis for the denial is that InterCoast representatives or agents did not explain the terms of the forms to the Plaintiffs and did not provide them with time to read and understand the documents. *Id.* The Court included InterCoast's paragraph twelve because the Plaintiffs' denial is not responsive to InterCoast's contention that the Plaintiffs signed and initialed the document.

[14] In paragraph thirteen, InterCoast states that it has attached true and accurate copies of the enrollment certification forms to its statement of facts. DSMF ¶ 13. Plaintiffs deny this assertion, contending that InterCoast representative or agents did not explain the terms of the forms to the Plaintiffs and did not provide them with them with time to read and understand the documents. PRDSMF ¶ 13. The Court includes InterCoast's paragraph thirteen because the Plaintiffs' denial is not responsive to InterCoast's contention that the attached documents are accurate copies.

[15] In paragraph fourteen, InterCoast states that "both Plaintiffs acknowledged by their signatures and initials that they agreed with" the statement quoted from the enrollment certification form. DSMF ¶ 14. In their response, the Plaintiffs deny that they were required to pay their tuition by graduation. PRDSMF ¶ 14. The Plaintiffs' initials do appear immediately next to the paragraph of the enrollment certification forms containing the quoted statement, and the Plaintiffs do not dispute this nor the text quoted from the form. They do, however, seem to dispute InterCoast's contention about the significance of their initialing the relevant paragraph and signing the form. The fact that the Plaintiffs signed the enrollment certification forms has already been established for purposes of the motion. DSMF ¶ 13 (citing *Aff. of Geeta A. Brown in Supp. of Def.'s Mot. for Summ. J.* Attachs. 3-4 *InterCoast Colleges/InterCoast Career Institute Practical Nursing Program Enrollment Certification*

In order to graduate, students must:

6. Fulfill all financial obligations to the College prior to graduation unless previous satisfactory arrangements have been made in writing.

7. Attend the exit interview sessions with Student Services, Career Services, and Financial Aid. If satisfactory financial arrangements have not been made, the graduation certificate or diploma will be withheld.

DSMF ¶ 15; PRDSMF ¶ 15.

After Jossie Reynoso graduated from InterCoast's Practical Nursing Program, she requested that InterCoast forward her transcripts to the State Nursing Board in late 2015 so that she could take the State Nursing Exam, called the NCLEX-PN exam, and InterCoast complied with that request because satisfactory financial arrangements had been made with the institution. DSMF ¶ 16; PRDSMF ¶ 16. Jossie Reynoso passed the NCLEX-PN on her first attempt and received her Practical Nursing License on or about December 17, 2015. DSMF ¶ 17; PRDSMF ¶ 17. Ms. Reynoso planned to begin nursing school in January 2016 to obtain her Registered Nurse's license; however, InterCoast initially refused to release her transcripts, falsely claiming that Ms. Reynoso had an outstanding balance with InterCoast.[16]

_____

*Forms*); PRDSMF ¶ 13. They signed the form once, at the bottom, not next to the paragraph containing the quoted text. For these reasons, the Court modifies InterCoast's paragraph fourteen to omit InterCoast's suggestion as to the legal significance of the paragraph the Plaintiffs initialed and what would be a repeat reference to their having signed the form.

[16]     InterCoast denies Ms. Reynoso's contention. DRPSAMF ¶ 6. However, the Court is required to view contested evidence in the light most favorable to the non-movant, the Court adopted Ms. Reynoso's version. InterCoast also moves to strike the statement on the ground that the Plaintiffs' Complaint fails to mention Ms. Reynoso's desire to attend nursing school. *Id.* The Court does not view the Complaint as narrowly as InterCoast, and concludes that the allegations are sufficient to place InterCoast on notice that the Plaintiffs were claiming consequential damages from InterCoast's allegedly improper withholding of the transcript, even if each aspect of the claimed damages is not spelled out.

PSAMF ¶ 6; DRPSAMF ¶ 6.  Ms. Reynoso was unable to begin nursing school, and instead she hired Attorney Loranger to obtain her transcripts from InterCoast.  *Id.*

In January 2016, Attorney Loranger contacted InterCoast's counsel, Neil Evans, to request release of Ms. Reynoso's transcript.[17]  PSAMF ¶ 7; DRPSAMF ¶ 7.  Attorney Evans, counsel for InterCoast, advised Attorney Loranger that because Ms. Reynoso owed money to Tuitions Options, the organization that InterCoast uses to finance loans, InterCoast would not release any transcripts.[18]  PSAMF ¶ 8; DRPSAMF ¶ 8.  Ms. Reynoso sent Attorney Evans a copy of her statement from Tuition Options showing that her loan had a zero balance.[19]  PSAMF ¶ 9; DRPSAMF ¶ 9.  When InterCoast continued to refuse to release the transcript, Ms. Reynoso filed this lawsuit.[20]  PSAMF ¶ 10; DRPSAMF ¶ 10.

---

[17]    InterCoast denies Plaintiffs' paragraph seven.  DRPSAMF ¶ 7.  InterCoast asserts the statement is hearsay and that there is no foundation for Ms. Reynoso's knowledge of Attorney Loranger's conduct.  *Id.*  InterCoast requests that the Court strike the statement based on relevancy and foundational grounds.  *Id.*

The Court views InterCoast's responses as frivolous.  The Court cannot understand on what basis InterCoast would in good faith deny that Attorney Loranger contacted Attorney Evans.  In Attorney Evans' own sworn declaration dated March 8, 2018, Attorney Evans represents that before this litigation, he advised Attorney Loranger that Ms. Reynoso had an outstanding balance with InterCoast.  *Decl. of Neil C. Evans in Support of Mot. for Summ. J.* ¶ 1 (ECF No. 69).  This litigation was initiated on April 6, 2016.  The Plaintiffs' statement pertains to contact between Attorneys Loranger and Evans in January 2016.  So the lawyers were in touch in early 2016.  Also, the fact of the contact is not hearsay because it is not an assertion.  FED. R. EVID. 801(a).  Further, if Attorney Loranger signed an affidavit stating that he had contacted Attorney Evans on behalf of Ms. Reynoso, his statement would not be hearsay and there would be no foundational issue.  Finally, in these circumstances, the Court would allow the statement under Federal Rule of Evidence 807, the residual exception.  The Court rejects InterCoast's request to strike and includes Plaintiffs' paragraph seven.

[18]    InterCoast denies Plaintiffs' paragraph eight.  DRPSAMF ¶ 8.  The Court rejects InterCoast's denial for the same reasons set forth in footnote 16.

[19]    InterCoast denies Plaintiffs' paragraph nine.  DRPSAMF ¶ 9.  The Court rejects InterCoast's denial for the same reasons set forth in footnote 16.

[20]    InterCoast denies Plaintiffs' paragraph ten.  DRPSAMF ¶ 10.  The Court rejects InterCoast's denial for the same reasons set forth in footnote 16.

After Maria Perez-Webber graduated from InterCoast's Practical Nursing Program, InterCoast did not forward her transcripts to the State Board of Nursing in 2015 despite the fact that Ms. Perez-Webber had met her financial obligations to InterCoast.[21] DSMF ¶ 18; PRDSMF ¶ 18. In April 2016, InterCoast forwarded her transcripts to the State Board of Nursing, and Ms. Perez-Webber took the NCLEX-PN exam shortly thereafter.[22] DSMF ¶ 19; PRDSMF ¶ 19. Ms. Perez-Webber passed the NCLEX-PN exam on her first try and received her Practical Nursing License in or about June 2016. DSMF ¶ 20; PRDSMF ¶ 20.

In this lawsuit, Geeta Brown, InterCoast's corporate president, submitted an affidavit in which she attests that as of late 2015, Ms. Reynoso had made "satisfactory financial arrangements" with InterCoast.[23] PSAMF ¶ 11; PRDSMF ¶ 11. Other than releasing the transcript to the Nursing Board, InterCoast has not otherwise released Ms. Reynoso's transcript because it contends she still owes it money, and Ms. Reynoso has been unable to apply to a registered nursing program because she cannot provide her transcript.[24] PSAMF ¶ 12; DRPSAMF ¶ 12. If Ms. Reynoso had started nursing school to obtain her RN in January 2016, she likely would have graduated from

---

[21] InterCoast states that it did not forward Ms. Perez-Webber's transcripts to the State Board of Nursing because she had failed to fulfill her financial obligations to InterCoast. DSMF ¶ 18. Ms. Perez-Webber denied this assertion and affirmatively alleged that she had fulfilled those obligations. PRDSMF ¶ 18. As the Court is required to view contested facts in the light most favorable to the non-movant, the Court includes Ms. Perez-Webber's version of these contested facts.

[22] InterCoast states that Ms. Perez-Webber did not fulfil her financial obligations to InterCoast until April 2016. DSMF ¶ 19. Ms. Perez-Webber denied this. PRDSMF ¶ 19. As the Court is required to view contested facts in the light most favorable to the non-movant, the Court excludes InterCoast's statement about when Ms. Perez-Webber fulfilled her financial obligation to InterCoast.

[23] InterCoast interposed a qualified response to Plaintiffs' paragraph 11, noting that Ms. Brown did make the statement, but correcting her first name as Geeta, not Ghetta. DRPSAMF ¶ 11. The Court includes the Plaintiffs' paragraph 11, and it corrects the spelling error.

[24] InterCoast objects to this paragraph largely on the same basis it previously objected. DRPSAMF ¶ 12. The Court overrules its objections for same reasons it previously did so.

nursing school and obtained her RN in January 2017 and commenced employment as an RN in March 2017.[25]  PSAMF ¶ 13; DRPSAMF ¶ 13.  Ms. Reynoso currently earns $29.00 per hour as an LPN, and based on her research, search of employment ads, and discussions with RNs, Ms. Reynoso is aware that the average starting pay for an RN in Massachusetts is $50.00 per hour.[26]  PSAMF ¶ 16; DRPSAMF ¶ 16.  As an LPN, Ms. Reynoso currently earns $21.00 less per hour than she would if she were an RN.[27]  PSAMF ¶ 17; DRPSAMF ¶ 17.  Ms. Reynoso often works sixty to seventy hours per week and she therefore loses approximately $1,300 per week in compensation by not being an RN.[28]  PSAMF ¶ 18; DRPSAMF ¶ 18.  To date, Ms. Reynoso contends that she has lost approximately $75,000 due to InterCoast's refusal to provide her with her transcript.[29]  PSAMF ¶ 19; DRPSAMF ¶ 19.

After Term III, InterCoast closed its Kittery campus due to the poor facilities at the Kittery campus and forced the students, including Ms. Perez-Webber, to

---

[25]    InterCoast denies this paragraph and asks the Court to strike it on the ground that it is speculative and without foundation.  DRPSAMF ¶ 13.  The Court overrules the objection and denies the motion to strike on the ground that the paragraph tracks Ms. Reynoso's Affidavit and the Court presumes she is aware of the length of time it takes to complete a nursing degree if one is a licensed practical nurse and the prospects for employment as an RN.  *See* PSAMF Attach. 2, *Aff. of Jossie Reynoso* ¶ 10.  InterCoast's objections therefore go to weight, not admissibility, and are the stuff for cross-examination, not available in summary judgment.

[26]    InterCoast denies this paragraph and asserts there is no factual basis for it.  DRPSAMF ¶ 16.  Without determining whether Ms. Reynoso will have established a proper foundation for admission of this evidence at trial, the Court determines that Ms. Reynoso has established a proper foundation for purposes of summary judgment.  InterCoast's objections are directed toward either witness voir dire or toward cross-examination, and neither is available at summary judgment.

[27]    InterCoast denies this paragraph on foundational grounds.  DRPSAMF ¶ 17.  The Court rejects InterCoast's denial for the same reasons previously set forth.

[28]    InterCoast denies this paragraph on foundational grounds.  DRPSAMF ¶ 18.  The Court rejects InterCoast's denial for the same reasons previously set forth.

[29]    InterCoast denies this paragraph on foundational grounds.  DRPSAMF ¶ 19.  The Court rejects InterCoast's denial for the same reasons previously set forth.  The Court altered Plaintiffs' paragraph 19 to clarify that the $75,000 is what Ms. Reynoso claims she has lost, and may not be what, as a matter of fact, she has actually lost.

commute to InterCoast's South Portland location.[30]  PSAMF ¶ 20; DRPSAMF ¶ 20.

The additional commuting cost Ms. Perez-Webber about $1,000.  *Id.*

Ms. Perez-Webber took out loans through InterCoast to finance her education.

PSAMF ¶ 21; DRPSAMF ¶ 21.  The terms of the loans allowed her up to thirty-six

months to repay them.[31]  *Id.*  After Ms. Perez-Webber graduated, InterCoast refused

to release her transcripts unless she accelerated payment of the remaining balance

on her loan with a lump-sum payment of several thousand dollars.[32]  PSAMF ¶ 22;

DRPSAMF ¶ 22.  Ms. Perez-Webber repeatedly requested that InterCoast release her

transcripts so that she could take her LPN nursing boards; however, InterCoast

refused.[33]  PSAMF ¶ 23; DRPSAMF ¶ 23.  In April 2016, Ms. Perez-Webber was able

to make a lump-sum payment to pay off the balance of her loan.[34]  PSAMF ¶ 24;

---

[30]     InterCoast denies this paragraph, positing that the reason InterCoast closed Kittery was for "business reasons" and that its enrollment agreement allowed it to do so.  DRPSAMF ¶ 29.  The Court overrules InterCoast's denial.  First, there may have been more than one reason that InterCoast closed Kittery, and, for purposes of the motion for summary judgment, the Court is not required to accept InterCoast's generalized "business reasons" claim over the Plaintiffs' claim that it closed the Kittery campus due to inadequate facilities.  In fact, the Court is required to accept the version of the facts most favorable to the Plaintiffs in ruling on the pending motion.  Whether InterCoast was authorized to transfer its students to South Portland is a mixed question of law and fact and, even assuming that it was authorized to do so under the enrollment agreement, this does not necessarily mean that it is not liable for damages flowing to its students from its closing decision.

[31]     Although InterCoast admits that it financed some of her tuition, it denies Plaintiffs' paragraph twenty-one on the grounds that she missed payments and was in default under the payment plan.  DRPSAMF ¶ 21.  InterCoast concedes that it withheld releasing her transcript until April 12, 2016, when she paid the balance on her account.  *Id.*  The Court declines to accept InterCoast's denial.  First, Plaintiffs' statement only contends that the term of the loan was thirty-six months, a fact that should have been admitted or denied.  Instead, InterCoast contends that Ms. Perez-Webber's default authorized it to withhold her transcript.  At the least, the default issue raises factual disputes that the Court must view in the light most favorable to Ms. Perez-Webber.

[32]     InterCoast interposes a qualified response, positing that Ms. Perez-Webber defaulted on her finance agreement and therefore, InterCoast refused to provide the transcripts.  The Court declines to accept InterCoast's qualified response for the reasons previously explained.

[33]     InterCoast interposes a qualified response, positing that Ms. Perez-Webber defaulted on her finance agreement and therefore, InterCoast properly refused to provide the transcripts.  The Court declines to accept InterCoast's qualified response for the reasons previously explained.

[34]     InterCoast interposes a qualified response, positing that Ms. Perez-Webber defaulted on her finance agreement and therefore, InterCoast properly refused to provide the transcripts.  The Court

DRPSAMF ¶ 24. Ms. Perez-Webber was able to take her LPN Boards in June of 2016, which she immediately passed.[35] PSAMF ¶ 25; DRPSAMF ¶ 25.

Ms. Perez-Webber planned to take the LPN Nursing Boards in October 2015.[36] PSAMF ¶ 26; DRPSAMF ¶ 26. At that time, Ms. Perez-Webber was working as a Licensed Nursing Aid (LNA) earning $16.00 per hour. PSAMF ¶ 27; DRPSAMF ¶ 27. If Ms. Perez-Webber had taken the LPN Boards in October 2015, she would have received a raise to $23.00 per hour.[37] PSAMF ¶ 28; DRPSAMF ¶ 28. InterCoast's refusal to release Ms. Perez-Webber's transcripts delayed by eight months her ability to take the LPN Boards and obtain the raise.[38] PSAMF ¶ 29; DRPSAMF ¶ 29. The eight month delay caused Ms. Perez-Webber to lose at least $13,000 in income.[39] PSAMF ¶ 30; DRPSAMF ¶ 30.[40]

---

declines to accept InterCoast's qualified response for the reasons previously explained. InterCoast also objects to Ms. Perez-Webber's statement that she was "eventually able" to pay off the loan. Although it seems trivial, the Court eliminates the "eventually able" phrase from Plaintiffs' paragraph 24.

[35] InterCoast objects to the phrase "immediately passed" as vague and inapplicable. DRPSAMF ¶ 25. The Court disagrees and includes the phrase.

[36] InterCoast posits that Ms. Perez-Webber was aware of its policies regarding payment of tuition and that she nevertheless defaulted. DRPSAMF ¶ 26. It also characterizes the statement as speculative because of uncertainty about whether Ms. Perez-Webber would have been prepared to take the exam then and whether she would have passed the exam. *Id.* InterCoast's objection is not responsive to whether Ms. Perez-Webber planned to take her boards in October 2015, and the Court overrules it.

[37] InterCoast denies Plaintiffs' paragraph twenty-eight based on its view that her possible raise is speculative. DRPSAMF ¶ 28. The Court declines to accept InterCoast's denial. The Plaintiffs base paragraph twenty-eight on Ms. Perez-Webber's affidavit, and presumably she is aware what her employer was paying LPNs opposed to LNAs.

[38] InterCoast denies Plaintiffs' paragraph twenty-nine based on its view that her possible raise is speculative. DRPSAMF ¶ 29. The Court declines to accept InterCoast's denial for the reasons set forth in footnote 37.

[39] InterCoast denies Plaintiffs' paragraph thirty based on its view that her possible raise is speculative. DRPSAMF ¶ 30. The Court declines to accept InterCoast's denial for the reasons set forth in footnote 37.

[40] In Plaintiffs' paragraph thirty-one, they posit information about another case that a nursing student brought against InterCoast in 2011 in Cumberland County Superior Court that resulted in a $300,000 verdict against InterCoast, including $30,000 in punitive damages. PSAMF ¶ 31. InterCoast

## IV.    THE POSITIONS OF THE PARTIES

### A.    InterCoast's Motion

InterCoast's motion for summary judgment is primarily based on its contention that the contract between the Plaintiffs and InterCoast expressly allows InterCoast to do the exact things about which the Plaintiffs are now complaining, and therefore the Plaintiffs have no ground to complain.  *Def.'s Mot.* at 7-10.  In InterCoast's view, to the extent the Plaintiffs complain that InterCoast provided them an inadequate education, their performance on the state LPN Board belies their complaint since both Ms. Perez-Webber and Ms. Reynoso passed the licensing examination the first time they took it.  *Id.* at 8.  Although the Plaintiffs complain about the one-week break between terms that InterCoast instituted while they were there, InterCoast insists that the contract allows it to make such adjustments to the academic calendar.  *Id.*  Similarly, InterCoast argues that it contractually reserved the right to change locations, here from Kittery to South Portland.  *Id.*  Finally, InterCoast says that the contract allows it to withhold transcripts for those students who owe it money and therefore there was no breach of the contract by InterCoast when it withheld transcripts from both Plaintiffs.  *Id.*  InterCoast says that once it becomes clear that the contract allowed it to proceed in the fashion that it did, the negligence and fraudulent misrepresentation claims must fail as well.  *Id.*

In addition, InterCoast says that the Plaintiffs have failed to allege $75,000 in damages in a manner sufficient for the Court to continue to exercise diversity

---

objected on relevance grounds.  DRPSAMF ¶ 31.  The Court agrees with InterCoast and has not included Plaintiffs' paragraph 31 in its recitation of the facts.

jurisdiction. *Id.* at 11-12. In InterCoast's words, it contends that this Court has "lost subject matter jurisdiction—here, the clear absence of more than $75,000 per Plaintiff in controversy." *Id.* at 12. InterCoast urges the Court to dismiss the claims and remand them to Superior Court for the state of Maine.[41] *Id.*

## B. The Plaintiffs' Opposition

In their opposition, the Plaintiffs argue that they are claiming the right to receive back the $37,000 in tuition they each paid InterCoast because they received a deficient education and that the state of Maine Board of Nursing placed InterCoast's Kittery facility on probation and eventually revoked its license. *Pls.' Opp'n* at 2. In 2016, they say, the state Board of Nursing forced InterCoast to close its nursing program altogether. *Id.*

Next, Ms. Reynoso says that she has been unable to attend a nursing school because InterCoast has refused to release her transcripts. *Id.* at 2-3. This is true even though InterCoast's corporate president Geeta Brown swore under oath that by late 2015, Ms. Reynoso had made "satisfactory financial arrangements" with InterCoast. *Id.* at 3. Ms. Reynoso says that her nursing career as a registered nurse has been delayed by fourteen months to date. *Id.* She claims $75,000 in lost wages, which she attributes to InterCoast's refusal to release her transcripts. *Id.* at 3-4.

---

[41] The Court is confused by this demand. The case was not removed from state to federal court. Therefore, even if InterCoast were correct regarding the amount in controversy, the Court would not remand the case back to a place it has never been. If this Court concluded that it did not have jurisdiction, it would dismiss the case, and it would be up to the Plaintiffs whether to start anew in state court.

Ms. Perez-Webber's claims generally track Ms. Reynoso's. Ms. Perez-Webber says that InterCoast's refusal to release the transcript caused her to lose $13,000 in wages. *Id*. at 4. She also claims commuting expenses totaling $1,000 stemming from the closure of Kittery and her subsequent need to travel to South Portland for schooling. *Id*. at 4-5.

Both Plaintiffs seek punitive damages against InterCoast. *Id*. at 5.

## C.  InterCoast's Reply

In reply, InterCoast argues that, other than the Plaintiffs' general claim that InterCoast "utterly failed" to provide what it advertised and what the Board of Nursing required, there are "no facts set forth in either Declaration to support any alleged breach of contract or any damages suffered from an alleged breach of contract." *Def.'s Reply* at 2. InterCoast contends that the Plaintiffs alleged no damages from the supposed breach of contract. *Id*. InterCoast notes that the Plaintiffs concede that they each passed their Nursing Boards the first time and obtained their LPN licenses. *Id*. Thus, from InterCoast's perspective, the Plaintiffs received the benefit of their contract with InterCoast. *Id*. at 2-3.

InterCoast maintains that Ms. Perez-Webber's commuter expense claim is barred by the language in the enrollment agreement that allowed InterCoast to change the location of the education. *Id*. at 3.

InterCoast says that the Complaint does not sufficiently allege the delayed transcript claim and that in any event the contract expressly requires payment in full before the release of transcripts. *Id*. at 3-4.

InterCoast next asserts that the negligent and intentional misrepresentation claims must fail because the Plaintiffs' allegations are too conclusory and the Plaintiffs failed to present any evidence of damages caused by the alleged misrepresentations. *Id.* at 4-5.

Turning back to the delayed release of transcripts claim, InterCoast argues that based on Geeta Brown's sworn declaration, the Court should not accept the contrary statement by Ms. Reynoso that she paid off the balance of the loan collected by Tuition Options. *Id.* at 5. As for Ms. Perez-Webber, InterCoast reiterates its view that she was in default of her loan and therefore it was entitled to treat the loan as unpaid for purposes of releasing her transcript. *Id.* at 5-6. For both Ms. Reynoso and Ms. Perez-Webber, InterCoast repeats its main contention that their claims are barred by the express terms of the contracts. *Id.* at 6.

Finally, InterCoast restates its contention that the evidence is insufficient to support the minimum amount in controversy required for the Court to exercise diversity jurisdiction, and it says that remand is mandatory "if it is determined that this Court has lost subject matter jurisdiction based upon the clear absence of more than $75,000 per Plaintiff in controversy." *Id.* at 7.

## V.    DISCUSSION

### A.    Summary Judgment

The Court disagrees with InterCoast on its primary contention about the viability of the Plaintiffs' claims. The Plaintiffs' theory is that they signed onto an InterCoast program based on InterCoast's representations of a certain level of

educational quality, including the promise that InterCoast's Kittery program was accredited. In exchange for an acceptable level of educational quality, they paid InterCoast in excess of $37,000 to attend the LPN program in Kittery. When they arrived, they discovered that the Kittery program did not live up to InterCoast's promises and the state Board of Nursing placed the InterCoast program on probation, ultimately revoking its license in 2016. They therefore seek the return of the tuition money they paid for a program that failed to meet InterCoast's advertised and contracted-to promises.

Preliminarily, the Court notes that, under Maine law, none of the Plaintiffs' three counts is well-suited for resolution prior to the fact-finding stage. "[T]he question of whether there has been a breach of contract is a question of fact." *VanVoorhees v. Dodge*, 679 A.2d 1077, 1080 (Me. 1996). Likewise, with respect to the negligent misrepresentation count, "[w]hether a party made a misrepresentation and whether the opposing party justifiably relied on a misrepresentation are questions of fact." *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 19, 55 A.3d 443. "A common, essential element of both [negligent misrepresentation and fraud] claims is the requirement of a false representation." *Guiggey v. Bombardier*, 615 A.2d 1169, 1173 (Me. 1992). Viewed in the light most favorable to the Plaintiffs, the contrast between InterCoast's LPN program as advertised and its actual LPN program creates genuine issues of material fact as to whether InterCoast met its contractual obligations to the Plaintiffs, the veracity of its representations regarding the

program, and whether and to what extent the Plaintiffs detrimentally relied on those representations.

The Court is also unconvinced by InterCoast's assertion that the Plaintiffs' pleadings are fatally deficient with respect to damages. The Maine Supreme Judicial Court has held that the ordinary measure of damages for breach of contract is an injured party's "expectation interest," which it has defined, quoting the Restatement (Second) of Contracts, as the party's "interest in having the benefit of [its] bargain by being put in as good a position as [it] would have been in had the contract been performed . . . ." *Deering Ice Cream Corp. v. Colombo, Inc.*, 598 A.2d 454, 456-57 (Me. 1991) (quoting Restatement (Second) of Contracts § 344 (Am. Law Inst. 1981)).

The Court understands InterCoast's point about the vagueness of the Plaintiffs' contentions. The general assertion that InterCoast "utterly failed" to live up to its advertised promises could be viewed as a "conclusory allegation[]" under *Cortés-Rivera*, 626 F.3d at 26. But the Plaintiffs also allege that InterCoast failed to comply with the requirements of the state of Maine Board of Nursing and that the Board therefore "placed [InterCoast]'s nursing program on probation and eventually revoked its license because the [Practical Nursing P]rogram did not meet the minimum requirements to operate a nursing school, [a decision that] caus[ed] InterCoast] to close its nursing program in 2016." PSAMF ¶ 5; DRPSAMF ¶ 5. At first blush, the fact that both Mses. Perez-Webber and Reynoso passed their LPN boards on the first try seems to cut against their theory of the case against InterCoast. But it does not necessarily establish that they got from InterCoast what they

19

bargained for. The Plaintiffs could have passed the LPN boards despite, not because of, the quality of the education they received from InterCoast, and, in any event, they are now burdened with having graduated from an LPN program that may be sullied by InterCoast's accreditation issues with the state of Maine Board of Nursing and closure.

At this stage, the Court is constrained by its obligation to assess whether there are any genuine issues of material fact that preclude the granting of summary judgment. If, as Plaintiffs claim, InterCoast's Kittery campus was so inadequately staffed and equipped that the state regulatory body, the Board of Nursing, placed InterCoast on probation while Mses. Perez-Webber and Reynoso were nursing students and revoked its license shortly after they graduated, a jury could well decide that InterCoast failed to live up to its most fundamental contractual obligations and that the Plaintiffs are entitled to damages. The Plaintiffs have pointed to a variety of ways in which they allege they are not in as good a position as they bargained for, and the Court does not perceive their alleged damages as so amorphous as to be non-cognizable. With respect to damages associated with the negligent misrepresentation and fraud claims, the Plaintiffs specifically allege economic harms, which such causes of action are designed to address. *See Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 11, 66 A.3d 585; *Jourdain v. Dineen*, 527 A.2d 1304, 1307 (Me. 1987).

Regarding InterCoast's arguments that because its enrollment agreement with each Plaintiff expressly allowed it to change the academic calendar and the location of the classes, the language in the contractual provision that InterCoast

highlighted requires the changes to be "reasonable" and for certain specified reasons. *See* DSMF ¶ 7 ("to make reasonable changes . . . in the interest of improving the student's education, or where deemed necessary due to industry changes, academic scheduling, or professional requirements"). Preliminarily, InterCoast's argument assumes that it is entitled to enforce the terms of its contract. If the Plaintiffs are able to convince the jury that the contract is void due to InterCoast's failure to meet its basic educational obligations, InterCoast will not be able to defend these claims based on a void contract. If the contract terms are enforceable, whether the complained-of changes that InterCoast effected during the Plaintiffs' time as students were "reasonable" and/or made for covered reasons are mixed questions of fact and law and therefore, InterCoast is not entitled to summary judgment. Furthermore, even if the enrollment agreement gives InterCoast the authority to make these changes, the contract does not address whether it must reimburse the Plaintiffs from damages they incurred as a consequence of InterCoast's changes.

As regards the transcript withholding issue, Ms. Reynoso generated a material question of fact by revealing that InterCoast corporate president Geeta Brown expressly represented that Ms. Reynoso had made satisfactory financial arrangements with InterCoast as of late 2015 and yet InterCoast even as today continues to withhold her transcript from others. This alone generates a genuine issue of material fact that must be resolved by a jury. As for Ms. Perez-Webber, whether she in fact defaulted on her loan with InterCoast, and, if so, whether her

default entitled InterCoast to withhold her transcripts are questions that require jury resolution.

Given the various material facts as to which there exist genuine disputes, InterCoast's motion must be denied.

## B. Subject Matter Jurisdiction

"It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction," *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004), and the Court is satisfied that it has subject matter jurisdiction over this case. As for the $75,000 jurisdictional amount required for diversity-based jurisdiction under 28 U.S.C. § 1332(a), the existence of which InterCoast disputes here, the plaintiff bears the burden of establishing that the claim meets the jurisdictional amount. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001); *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) ("[T]he party invoking the jurisdiction of the federal court carries the burden of proving its existence"). Under long-established law, a court may consider both actual and punitive damages in determining jurisdictional amount. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943). "All the plaintiff must do to carry [her] burden . . . is to set forth facts which, if true, would prevent the trier from concluding to a *legal certainty* that the potential recovery is capped at a figure below the jurisdictional amount." *Payne v. Goodyear Tire & Rubber Co.*, 229 F. Supp. 2d 43, 46 (D. Mass. 2002) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 30-31 (1st Cir. 2001) (emphasis in original)).

Ms. Reynoso clearly has alleged specific damages in excess of $75,000. She claims the right to receive back the $37,000 she paid in tuition, lost income of $75,000, and punitive damages in an unspecified amount. On its face, her damages claim exceeds the $75,000 threshold.

Ms. Perez-Webber claims the right to receive back the $37,000 she paid in tuition, lost income of $13,000, $1,000 in commuting expenses, and punitive damages in an unspecified amount. Her subtotal is $51,000. To receive a judgment in excess of $75,000, Ms. Perez-Webber would have to receive a punitive damages award of at least $24,000. The trial court has wide discretion in evaluating punitive damages when such damages are claimed to confer federal jurisdiction. *Giannetta v. Boucher*, No. 92-1488, 1992 U.S. App. LEXIS 33313, at *14 (1st Cir. Dec. 22, 1992) (citing *Ehrenfeld v. Webber*, 499 F. Supp. 1283, 1292 (D. Me. 1980)). Here, although there is no way to accurately assess what a jury might award in punitive damages, if the jury concluded that InterCoast defrauded Ms. Perez-Webber, the Court concludes that it is not a legal certainty that a jury would not award at least $24,000 in punitive damages against InterCoast.

The Court concludes that each Plaintiff has met the $75,000 jurisdictional amount-in-controversy requirement.

## VI.    CONCLUSION

The Court DENIES Defendant InterCoast Career Institute's Motion for Summary Judgment (ECF No. 60).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of May, 2018